IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

JOYCE JONES and
MARGARET SCHNITZER, on behalf of themselves
and a class of those others similarly situated,

    Plaintiff,

v.                                                                    Case No.

**THE JEROME GOLDEN CENTER FOR**
**BEHAVIORAL HEALTH, INC.**

    **Defendant.**
_____/

## CLASS ACTION COMPLAINT

**JOYCE JONES and MARGARET SCHNITZER** ("Plaintiffs"), on behalf of themselves and a class of those similarly situated by and through the undersigned counsel, hereby sues **THE JEROME GOLDEN CENTER FOR BEHAVIORAL HEALTH, INC.** ("Defendant") and allege as follows:

## NATURE OF THE ACTION

1. This is an action brought pursuant to the Worker Adjustment and Retraining Notification Act of 1988, 29 U.S.C. § 2101 et. seq. ("WARN Act"). Defendant is liable under the WARN Act for the failure to provide the Plaintiffs and all others similarly situated at least 60 days' advance notice of their termination, as required by the WARN Act.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1331 and 29 U.S.C § 2104 (a)(5).

3. Venue in this Court is proper pursuant to 29 U.S.C. § 2104(a)(5).

## THE PARTIES

4. Plaintiff Joyce Jones is a citizen and resident of the State of Florida and was employed by Defendant until termination without cause on or about October 3, 2019. Plaintiff Jones submits to the jurisdiction of this Court.

5. Plaintiff Margaret Schnitzer is a citizen and resident of the State of Florida and was employed by Defendant until termination without cause on or about October 7, 2019. Plaintiff Schnitzer submits to the jurisdiction of this Court.

6. Upon information and belief, at all relevant times, Defendant is a Florida Not For Profit Corporation organized and existing under and by virtue of the laws of Florida and registered to do business within Florida, with its principal place of business in Palm Beach County, Florida. Defendant has, at all times material hereto, conducted substantial and continuous business within the Southern District of Florida, and is subject to the laws of the United States and the State of Florida.

7. Defendant was a business focusing on providing behavioral health care services. Plaintiffs were employed at Defendant's business located in Palm Beach County, Florida.

8. Defendant provided services at various locations, including but not limited to the "Main Campus," located at 1041 45th Street, West Palm Beach, Florida 33407 ("Facilities").

## STATEMENT OF FACTS

9. The WARN Act defines a "plant closing" as follows:

> The permanent or temporary shutdown of a single site of employment, or one or more facilities or operating units within a single site or employment, if the shutdown results in an employment loss at the single site of employment during any 30-day period for 50 or more employees excluding any part-time employees.

29 U.S.C. § 2101(a)(2).

10. WARN Act defines a "mass layoff" as a reduction in force which is not the result of a plant closing and results in an employment loss at a single site of employment during any 30-day period for at least 33% of the active employees (excluding part-time employees) and at least 50 employees (excluding part-time employees); or at least 500 employees (excluding part-time employees). 29 U.S.C. § 2101(a)(3); 20 C.F.R. § 639.3(c).

11. The distinction between a plant closing and a mass layoff, according to the regulations, is that a plant closing involves "employment loss which results from the shutdown of one or more distinct units within a single site or the entire site" while a mass layoff "involves employment loss, regardless of whether one or more units are shut down at the site." 20 C.F.R. §639.3(c)(1).

12. Plaintiffs and all other similarly situated employees were employees, employed by Defendant, who was their employer, for all relevant and required periods of time.

13. Plaintiffs and all other similarly situated employees were terminated as part of plant shutdowns or mass layoffs as defined by the WARN Act, for which they were entitled to receive 60 days' advance written notice under the WARN Act.

14. On or about September 24, 2019, Defendant filed a voluntary petition for bankruptcy under Chapter 11 of the United States Bankruptcy Code.

15. On or about October 2, 2019, Plaintiff Jones was advised that her employment was going to be terminated and that she should come in on October 3, 2019 to clean out her office.

16. On or about October 3, 2019, Plaintiff Jones cleaned out her office and was terminated.

17. On or about October 4, 2019, Defendant filed an Emergency Motion to Dismiss the bankruptcy case.

18. In a letter dated October 7, 2019, but not mailed to Plaintiff Schnitzer until October 17, 2019, Plaintiff Schnitzer was advised that her employment was being terminated.

19. On or about October 8, 2019, Jimmy Miller, chair of the Defendant's board sent an email to employees stating that they were being terminated beginning on October 8, 2019 and continuing thereafter.

20. The last day Plaintiff Schnitzer performed work for Defendant was on or about October 3, 2019.

21. On or about October 3, 2019, or on earlier or later dates, Plaintiffs and approximately 350 other similarly situated employees who reported to the Facilities were terminated as part of plant shutdowns or mass layoffs at the Facilities.

22.     Pursuant to the WARN Act, Plaintiffs maintain this action on behalf of themselves and on behalf of each of the other similarly situated former employees.

23.     Each of the other similarly situated former employees is similarly situated to the Plaintiffs in respect to his or her rights under the WARN Act.

24.     Defendant was required by the WARN Act to give Plaintiffs and the other similarly situated former employees or their representatives at least 60 days' advance written notice of their respective terminations.

25.     Prior to their terminations, neither Plaintiffs nor the other similarly situated former employees or their representatives received written notice that complied with the requirements of the WARN Act.

26.     Defendant failed to pay the Plaintiffs and the other similarly situated former employees their respective wages, salary, commissions, bonuses, accrued holiday pay, vacation, and other benefits which would have accrued for sixty (60) days following their respective terminations without notice and failed to make 403(b) contributions and provide them with health insurance coverage and other employee benefits.

## CLASS ACTION ALLEGATIONS

27.     Plaintiffs sue under Rule 23(a) and (b) of the Federal Rules of Civil Procedure and the WARN Act, on behalf of themselves, and a class of employees who worked at or reported to the Defendant's Facilities and were laid off without cause by Defendant as part, or as the reasonably foreseeable result, of plant shutdowns or mass layoffs ordered by Defendant at the Facilities (the "Class") on or about October 3, 2019 or on earlier or later dates.

28. The persons in the Class ("Class Members") are so numerous that joinder of all members is impracticable as there are over 300 potential class members.

29. There are questions of law and fact common to the Class Members, namely:

   (a) Whether the Class Members were employees of Defendant's who worked at or reported to Defendant's Facilities;

   (b) Whether the Defendant ordered the termination of employment of each of the Class Members without cause on their part and without giving them 60 days' advance written notice as required by the WARN Act; and

   (c) Whether the Defendant was subject to any of the defenses provided for in the WARN Act.

30. The claims of the representative parties are typical of the claims of the Class, as they were terminated as part of the plant shutdown or mass layoff and did not receive the requisite notice.

31. The representative parties will fairly and adequately protect the interests of the class.

32. Plaintiffs have retained counsel competent and experienced in complex class action employment litigation.

33. There is no conflict of interest between Plaintiffs and other members of the class.

34. A class action is superior to other available methods for the fair and efficient adjudication of this controversy—particularly in the context of WARN Act litigation, where the individual Plaintiffs and class members may lack the financial resources to vigorously

prosecute a lawsuit in federal court against a corporate defendant and separate actions would create a risk of inconsistent or varying adjudications with respect to individual class members and the adjudications with respect to individual class members would be dispositive of the interests of other members.

35. Defendant has acted on grounds that apply generally to the class.

36. There are questions of law and fact common to the Class Members that predominate over any questions solely affecting individual members of the Class, including but not limited to:

    (a) Whether the Class Members were employees of Defendant's who worked at or reported to Defendant's Facilities;

    (b) Whether the Defendant ordered the termination of employment of each of the Class Members without cause on their part and without giving them 60 days' advance written notice as required by the WARN Act; and

    (c) Whether the Defendant was subject to any of the defenses provided for in the WARN Act.

## CAUSE OF ACTION
## WARN ACT VIOLATIONS

37. At all relevant times, the Defendant employed 100 or more employees, exclusive of part-time employees, or employed 100 or more employees who in the aggregate worked at least 4,000 hours per week exclusive of hours of overtime within the United States as defined by the WARN Act, and employed more than 50 employees at the Facilities.

38. At all relevant times, the Defendant was an "employer" of the Class Members as that term is defined by the WARN Act.

39. On or about October 3, 2019, and at previous and subsequent times, Defendant ordered "plant shutdowns" or "mass layoffs" as those terms are defined by the WARN Act.

40. Defendant's actions at the Facilities resulted in an "employment loss" as that term is defined by the WARN Act for at least 33% of its workforce, and at least 50 of its employees, excluding (a) employees who worked less than six of the twelve months prior to the date WARN notice was required to be given and (b) employees who worked an average of less than 20 hours per week during the 90-day period prior to the date WARN notice was required to be given.

41. Defendant's termination of the Class Members' employment constituted plant shutdowns or mass layoffs as defined by the WARN Act.

42. Plaintiffs and each of the Class Members who were employed by Defendant and then terminated by Defendant as a result of Defendant's executing plant shutdowns or mass layoffs at the Facilities were "affected employees" as defined by the WARN Act.

43. Plaintiffs and each of the Class Members are "aggrieved employees" of the Defendant as that term is defined by the WARN Act.

44. Pursuant to the WARN Act, Defendant was required to provide at least 60 days' prior written notice of the termination, or notice as soon as practicable, to the affected employees, or their representative, explaining why the sixty (60) days' prior notice was not given.

45. Defendant failed to give at least sixty (60) days' prior notice of the termination in violation of the WARN Act.

46. Defendant failed to pay Plaintiffs and each of the Class Members their respective wages, salary, commissions, bonuses, accrued holiday pay, and accrued vacation for 60 working days following their respective terminations, and failed to make the pension and 403(b) contributions, provide other employee benefits under ERISA, and pay their medical expenses for 60 calendar days from and after the dates of their respective terminations.

47. As a result of Defendant's failure to pay the wages, benefits and other monies as asserted, Plaintiffs and Class Members were damaged in an amount equal to the sum of the members' unpaid wages, accrued holiday pay, accrued vacation pay, accrued sick leave pay and benefits which would have been paid for a period of sixty (60) calendar days after the date of their terminations.

## **RELIEF SOUGHT**

WHEREFORE, Plaintiffs and Class Members demand trial by jury and judgment against the Defendant as follows:

a. An amount equal to the sum of: unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay, pension and 403(b) contributions and other ERISA benefits, for sixty (60) working days following the member employee's termination, that would have been covered and paid under the then applicable employee benefit plans had that coverage continued for that period, all determined in accordance with the WARN Act, 29 U.S.C§2104(a)(1)(A);

b. Certification that, pursuant to Fed. R. Civ. P. 23 (a) and (b) and the WARN Act, Plaintiffs and the Other Similarly Situated Former Employees constitute a single class;

c. Designation of Plaintiffs as Class Representative;

d. Appointment of the undersigned attorneys as Class Counsel;

e. Interest as allowed by law on the amounts owed under the preceding paragraphs;

f. The reasonable attorneys' fees and the costs and disbursements the Plaintiffs incur in prosecuting this action, as authorized by the WARN Act; and

g. Such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs further demands a jury trial on all issues so triable as of right.

Respectfully submitted,

/s/ Ryan D. Barack
**Ryan D. Barack, B.C.S. (L&E)**
Florida Bar No. 0148430
Primary: rbarack@employeerights.com
Secondary: jackie@employeerights.com
**Kwall Barack Nadeau PLLC**
304 S. Belcher Road, Suite C
Clearwater, Florida 33765
(727) 441-4947
(727) 447-3158 Fax
Attorneys for Plaintiffs